### SMYTH *v.* NELSON, trustee, *et al.,* and *vice versa.*

1. The court committed no error in its construction of the legal effect of the writing attached to the petition as exhibit A, and in holding that the evidence authorized a sale by the plaintiff of the residence lot referred to in such writing.

2. Under the facts shown by the record, the court did not err in ordering that such writing be cancelled.

3. The court committed error in granting an injunction against the plaintiff, restricting her right to build on her residence lot referred to in the petition.

SEPTEMBER 20, 1910.

Equitable petition. Before Judge Pendleton. Fulton superior court. July 21, 1909.

*Reuben R. Arnold* and *Van Astor Batchelor,* for plaintiff.

*McDaniel, Alston & Black* and *Z. D. Harrison,* for defendants.

HOLDEN, J. Mrs. Margaret Smyth filed a complaint against C. K. Nelson as trustee for the congregation of St. Luke's Church, and the Protestant Episcopal Church in the Diocese of Atlanta, a corporation, which was the successor in Fulton county, "as regards the subject-matter of this litigation, of the Protestant Episcopal Church in the Diocese of Georgia." Along with other allegations, the petitioner made substantially the following: On April 25, 1904, she owned a certain piece of property in Atlanta, Georgia, hereinafter referred to as the residence lot, and on that date executed a writing of which the following is a copy, the detailed description of the property being omitted:

"Georgia, Fulton County. Having this day sold to the Rt. Rev. C. K. Nelson, as Trustee for the Congregation of St. Luke's Church, the property described as follows: [here follows description of a lot on Peachtree street, Atlanta, Ga.], and having been informed by Messrs. Lambert, DeSaussure, Williams, and Harrison, acting as a committee of the Vestry of said Church, that, in procuring the purchase of said property to be made, they were influenced by the fact that I had made a codicil to my will, bequeathing to the Diocese of Ga., to be used as a residence of the Bishop of Ga., the lot adjacent to the property hereinbefore described, on which adjacent lot is located my residence. Now, therefore, in consideration of the foregoing premises, and of the sum of ten dollars paid by the said Trustee, the receipt whereof is hereby acknowledged, I hereby agree and covenant with him, that, should I at any time be constrained by any cause to sell the said lot on which my said residence is located, the said Trustee or his successor in the office of Bishop shall have the option to buy the same at and for the sum of $25,000.00 for the said Diocese, to be used as a residence for its Bishop.

"This paper is not intended and should not be construed to indicate any purpose on my part to revoke said codicil by selling my said residence; but on the contrary it means that said codicil shall stand, and that my residence will not be sold unless I shall be constrained by circumstances requiring said sale.

"Witness my signature hereto affixed, this April 25th, 1904.

[Signed] Mrs. Maggie Smyth."

The above writing was recorded in the office of the clerk of the superior court of Fulton county. At the date of its execution there was in existence a will of the plaintiff, in which she bequeathed her residence lot to the Protestant Episcopal Church in the Diocese of Georgia, to be used as a residence for the Bishop of Georgia. She did not by the writing undertake to make the will then in existence irrevocable, nor was there any suggestion by any one that she would by said writing abridge her rights testamentary in said premises. Petitioner's right to revoke the will is recognized in the writing. Circumstances were alleged by virtue of which it was averred she was constrained to sell the property, and on the 5th of May, 1909, she notified the trustee in writing of this fact and gave him the right to buy within a specified time for $25,000, and this option was later extended. Defendants refused to avail themselves of the opportunity to purchase the property, and ignored the notice, and threatened prospective purchasers to follow the property in their hands should they buy from the plaintiff; and are using the writing to injure and vex petitioner in her enjoyment of the property and to prevent her from selling it. It was prayed that the defendants be required to surrender up the writing and that the same be cancelled, and that the defendants be barred from asserting or claiming any interest in the residence lot. Defendants denied the right of the plaintiff to have the writing cancelled. They contended that under the writing the plaintiff had no right to sell the residence property and revoke the codicil to her will, unless she was constrained for financial reasons to sell the residence lot. Defendants prayed for relief which will be fully set forth in this opinion. The case was heard before the trial judge upon evidence taken by counsel and submitted to him. The plaintiff excepted to certain portions of the decree rendered by the court, and to other portions the defendants excepted.

1. Defendants excepted to that portion of the decree which is as follows: "It is ordered, adjudged, and decreed: (1) That the causes of constraint, as that term is used in the writing marked Exhibit A to the petition, do not refer alone to financial causes; the plaintiff's financial condition is not passed upon by the court in this cause, but the court finds that there are causes other than

the plaintiff's financial condition which justify the cancellation of said Exhibit A. (2) That the said contract or writing marked Exhibit A be and it is hereby cancelled, annulled, and held for naught, and is directed to be surrendered and cancelled of record." A copy of the writing sought to be cancelled (set out in full in the statement of facts) was attached to the petition, and is the "Exhibit A" referred to in the decision. The court committed no error in holding "That the causes of constraint, as that term is used in the writing marked Exhibit A to the petition, do not refer alone to financial causes." In one clause in the writing the plaintiff covenanted and agreed that should she at any time "be constrained for any cause" to sell the residence lot, the trustee, or his successor, should have the option to buy it at $25,000. In the last clause preceding the attestation clause, it is stated that the lot would not be sold "unless I shall be constrained by circumstances requiring the sale." Evidently the words "constrained by any cause," and the words "constrained by circumstances requiring the sale," did not mean that she could not sell unless constrained to do so because her financial condition or estate was such as to constrain her to do so. It did not bind her not to sell unless compelled to sell to raise money with which to support herself. The court treated the effect of the writing as creating a binding obligation on the maker not to sell unless constrained to do so from some cause or circumstances requiring it. Conceding, without deciding, that such was its legal effect, the evidence was such as to authorize the finding by the court that the plaintiff was constrained to sell the residence lot from causes other than her financial condition, and the judgment of the court to this effect will not be disturbed. The record shows that the plaintiff gave to the defendants the option to buy the residence lot at $25,000, and they declined to avail themselves of the right to purchase it at that price. The defendants claimed that no cause or circumstances existed constraining the plaintiff to sell the residence lot, and that therefore she had no right to do so; and notified one to whom the plaintiff sought to sell the property that, should he buy it, they would at the proper time claim it. Having found that the plaintiff had the right to sell under existing causes and circumstances, the court committed no error in ordering the writing cancelled.

2. The plaintiff excepted to that portion of the decree which is

as follows: "That the plaintiff is estopped by her conduct from erecting a building or any part thereof further westward or nearer the sidewalk line of Peachtree street on her lot referred to in the petition as her residence lot, than her building is now located, and she is enjoined from so doing." In their answer the defendants, among other allegations, made substantially the following: They were moved to purchase the lot on which the church building was erected at the sum of $18,000 by reason of the fact that it was represented by the plaintiff that the residence lot would become the property of the Diocese, under the will of the plaintiff bequeathing it as above stated. The church building was erected after the writing hereinbefore referred to was executed. When the church building was about to be erected, the plaintiff requested that it be erected back from Peachtree street on a line with the body of the residence of the plaintiff; and defendants, at a cost of about $65,000, so erected the building about fifty feet from the sidewalk on Peachtree street because of such request, relying upon the writing above referred to and believing that the residence lot would, in the course of time, by virtue of the contract become the property of the Diocese. The church lot is about 60 feet in width fronting on Peachtree street, and the church building covers the entire width of the lot, and the use to which the residence lot adjoining it on the north side would be put was a most important factor in determining the authorities of the church in purchasing the property and in erecting the church building where it was erected as hereinbefore set out. Defendants understood the language in the writing above referred to to mean that Mrs. Smyth would not sell the property voluntarily, and that she would have the right to sell it only when circumstances arose which required her to sell it against her will. The plaintiff frequently represented, outside of the contract, that it was her purpose to give the residence lot to the Protestant Episcopal Church in the Diocese of Georgia for a residence for its Bishop. Defendants contend that the facts above stated work an easement in favor of St. Luke's Church and the defendant Nelson as trustee therefor, for a building line which prevented the erection of any part of a building on the residence lot nearer Peachtree street than the residence on the same was at the time located, and that these facts constitute an easement in their favor for light and air from the residence lot so as to prevent the

exclusion thereof by the erection of any building on the same closer to Peachtree street than the residence on such lot as now located. One witness for the defendants testified that the authorities of the church, recommending the purchase of the lot on which the church is erected, were informed by the plaintiff that in a codicil to her will the residence lot had been given to the Diocese to be used by it as a residence for its Bishop, and by reason of such information the church was influenced to buy the church lot; it being known that the codicil was revocable, but Mrs. Smyth insisting that there was no intention to revoke it, and acting upon the assumption that there was no intention to revoke the codicil, except for the reason stated in the writing, such writing was drawn "to cover the conditions as I understood them to exist at that time, and to state them as fairly and as conclusively as I could, and in accordance, as I understood it, with Mrs. Smyth's purpose and desire. . . I do not believe that the church would ever have been located on that lot, or that the lot would ever have been bought, had the committee thought it probable that the lot on the north side could have been" used so as to erect a building towards Peachtree street farther than the residence of the plaintiff then located on the same. There was other evidence to the effect that the plaintiff requested the authorities of the church to locate the church as they did, and that it was agreed between her and them that it should be so located. There was evidence that the writing referred to and the deed by the plaintiff to the lot on which the church was located were executed at the same time. We think the court committed error in granting the injunction to which the plaintiff excepted. The fact that the defendants erected the church building back from Peachtree street on a line with the body of the residence of the plaintiff because of the facts shown by the record before us would not create in favor of the defendants any right which would prevent the plaintiff from erecting a building on her residence lot towards Peachtree street farther than her residence thereon was located at the time the church was built. The fact that the church was erected the same distance from the street that the residence of the plaintiff was located, at the request of the plaintiff, would not prevent the latter from erecting a building on the residence lot between the residence and the street. She made no contract not to erect a building on such portion of her residence lot, and, under

any view of the effect of the writing, she had the right to sell the residence lot if at any time she should be constrained by circumstances or any cause to do so. There was nothing in the writing to restrict the use of the residence lot by any purchaser of it from her by way of erecting other buildings on it, if she was constrained to sell it as therein stated, and did sell it. If she sells the lot, as she has a right to do under the judgment of the court, the purchaser will obtain title to the entire lot, with no restrictions on his right to erect buildings on it between the residence and Peachtree street because such buildings will tend to exclude air and light from the church lot across this portion of the residence lot. The fact that the defendants erected the church building on the lot they bought from the plaintiff on a line with the residence of the plaintiff because she requested them to do so, and because they relied on her not selling in the exercise of her rights under the writing signed by her, would not prevent her, or a purchaser from her, from erecting a building on it towards the direction of Peachtree street beyond the point where her residence was located when the church was erected.

*Judgment reversed in the first case, and affirmed in the second.*
*All the Justices concur.*