S09A1602. AMERICAN LIEN FUND, LLC v. DIXON et al.
(690 SE2d 415)

HINES, Justice.

This appeal arises from the trial court's grant of an interlocutory injunction preventing American Lien Fund, LLC ("ALF") from barring Sharon Dixon's right to redeem her real property under OCGA § 48-4-40 et seq., after ALF purchased the property at a tax sale. For the reasons that follow, we affirm.

In 1976, Dixon acquired title to certain real property in Fulton County. In 2003, 2004, and 2005, tax fieri facias were issued by Arthur Ferdinand, Fulton County Tax Commissioner and ex-officio sheriff, for unpaid property taxes in each of those years. Ferdinand transferred the fieri facias to Vesta Holdings I, LLC ("Vesta"), for levy and tax sale. See OCGA § 48-3-19; *E-Lane Pine Hills v. Ferdinand*, 277 Ga. App. 566 (627 SE2d 44) (2005). At an auction on September 4, 2007, ALF was the highest bidder at $300,000, and received a tax deed. On November 29, 2007, Dixon sued Vesta and ALF, and asserted, inter alia, that the tax fieri facias were transferred to Vesta, and the property to ALF, illegally. She sought redemption of the property under OCGA § 48-4-40 et seq., and an injunction against any attempt to dispossess her, foreclose on the property or collect on any lien on it, and to maintain the status quo. On September 12, 2008, ALF served Dixon with a notice stating that the right to redeem the property would be foreclosed on November 14, 2008. At a hearing on October 10, 2008, the trial court granted an interlocutory injunction preventing Vesta and ALF from foreclosing Dixon's right of redemption. It appears that the injunctive remedy was not reduced to writing until May 4, 2009, when it was included in an order that dealt with several motions filed by Vesta, ALF, and Dixon. It is from this order that ALF timely brings this appeal.[1]

1. ALF contends that Dixon's suit could not be maintained

---

[1] Although a trial court's oral interlocutory order may be enforceable in certain

unless she had tendered the redemption amount set forth in OCGA § 48-4-42,[2] an amount based on the amount paid for the property at the tax sale that ALF calculates would be over $390,000. ALF notes that Dixon tendered to it $6,019.97, an amount she calculated based on the purported unpaid property taxes. ALF returned the tender.

In support of its argument that Dixon can continue her suit only by making a full and proper tender, ALF looks to OCGA § 48-4-47, which provides:

> (a) After notice to foreclose the right of redemption as provided for in this article has been given, no action shall be filed, allowed, sanctioned, or maintained for the purpose of setting aside, canceling, or in any way invalidating the tax deed referred to in the notice or the title conveyed by the tax deed unless and until the plaintiff in the action pays or legally tenders to the grantee in the deed or to his successors the full amount of the redemption price for the property, as provided for in this article.
>
> (b) Subsection (a) of this Code section shall apply unless it clearly appears that:
>> (1) The tax or special assessment for the collection of which the execution under or by virtue of which the sale was held was not due at the time of the sale; or
>> (2) Service or notice was not given as required in this article.

Although ALF is correct in noting that OCGA § 48-4-47 (a) gener-

---

circumstances, see *Chatfield v. Adkins-Chatfield*, 282 Ga. 190, 192-193 (1) (646 SE2d 247) (2007), generally, no appeal may be had until an order is entered and filed with the clerk of the superior court. See OCGA § 5-6-34 (a) (4); *State v. Morrell*, 281 Ga. 152 (635 SE2d 716) (2006); *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003). It does not appear that ALF sought entry of an appealable order by the trial court prior to the order of May 4, 2009.

[2] OCGA § 48-4-42 reads:

> The amount required to be paid for redemption of property from any sale for taxes as provided in this chapter, or the redemption price, shall with respect to any sale made after July 1, 2002, be the amount paid for the property at the tax sale, as shown by the recitals in the tax deed, plus any taxes paid on the property by the purchaser after the sale for taxes, plus any special assessments on the property, plus a premium of 20 percent of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made and 10 percent for each year or fraction of a year thereafter. If redemption is not made until more than 30 days after the notice provided for in Code Section 48-4-45 has been given, there shall be added to the redemption price the sheriff's cost in connection with serving the notice and the cost of publication of the notice, if any. All of the amounts required to be paid by this Code section shall be paid in lawful money of the United States to the purchaser at the tax sale or to the purchaser's successors.

ally provides that one who wishes to redeem the property must make a complete tender in order to challenge the tax deed, ALF has ignored OCGA § 48-4-47 (b) (1), which specifically creates an exception when "it clearly appears that . . . [t]he tax . . . was not due at the time of the sale." That is exactly what Dixon contends; she avers that she paid her 2003, 2004, and 2005 taxes, and thus asserts that no tax was due at the time of the tax sale.

ALF contends that OCGA § 48-4-47 (b)'s language stating that the exception to the tender requirement will apply only if it "clearly appears" that the taxes were not due, means that the trial court must first make a factual finding as to what "clearly appears" in order to apply an exception under OCGA § 48-4-47 (b). However, ALF cites to no statutory language or case law stating that a factual resolution of what "clearly appears" from the evidence is an issue to be decided by the trial court alone, and we find none. Here, there is a factual dispute as to whether Dixon falls into the exception provided in OCGA § 48-4-47 (b); she avers she paid her taxes and nothing was owed at the time of the tax sale. Thus, this case is unlike those in which there was no such factual dispute. See *Saffo v. Foxworthy*, 286 Ga. 284, 286 (3) (687 SE2d 463) (2009); *Hill v. Mayor & Aldermen of City of Savannah*, 233 Ga. App. 742, 743 (505 SE2d 35) (1998). "The sole purpose for granting interlocutory injunctions is to preserve the status quo of the parties pending a final adjudication of the case," *Bailey v. Buck*, 266 Ga. 405 (1) (467 SE2d 554) (1996) (citations and punctuation omitted), but ALF's reading of the statute would eviscerate this principle, essentially requiring that the trial court decide the facts of the case before deciding whether to grant an interlocutory injunction. And, the determination that the trial court may enjoin the bar to redemption while it considers the dispute regarding the validity of the tax sale is also in keeping with this Court's prior holding that

> [t]he enforcement and collection of taxes through the sale of the taxpayer's property has been regarded as a harsh procedure, and, therefore, the policy has been to favor the rights of the property owner in the interpretation of such laws. Since the policy has been to favor the property owner . . . provisions permitting the owner to redeem his property are liberally construed to accomplish their objectives.

*Blizzard v. Moniz*, 271 Ga. 50, 53-54 (518 SE2d 407) (1999) (citations and punctuation omitted).

2. ALF urges that the trial court's grant of the interlocutory injunction is erroneous because it did not specify its reasoning in

granting it. But, ALF has not shown that it requested findings of fact and conclusions of law, see OCGA § 9-11-52 (a), and thus it fails to demonstrate error. See *Sweeney v. Landings Assn.*, 277 Ga. 761, 763 (3) (595 SE2d 74) (2004). And, in its May 4, 2009 order, the trial court clearly stated that there was a factual dispute as to whether Dixon had paid her taxes, and recited that it granted the "interlocutory injunction preventing Defendants from seeking to debar Plaintiff's right of redemption until the issues in her Complaint were determined," and that the injunction preserved the status quo until that time.

3. Finally, ALF argues that the trial court's ability to enjoin the barment of the right of redemption had expired by the passage of 12 months since the tax sale. The tax sale occurred on September 4, 2007, the court granted the interlocutory injunction on October 10, 2008, and under ALF's notice of September 12, 2008, the right to redeem the property was to be foreclosed on November 14, 2008. In advancing this argument, ALF looks to OCGA § 48-4-40 (1),[3] which sets an initial period of 12 months from the date of the tax sale during which redemption may occur. Again, ALF shows no authority for finding that OCGA § 48-4-40 (1)'s declaration that one entitled to redeem the property may, in any event, do so within 12 months also means that the trial court may, in no way and regardless of circumstances, act after those 12 months have passed, and we find none. Dixon sought an injunction well before the passage of 12 months, and ALF's position would essentially mandate that the superior court, in considering the issue before it, act within a certain time, or be deprived of the power to enjoin the proceedings, while still having before it a suit challenging the legitimacy of the underlying tax sale. Such does not appear in the statute. Superior courts are empowered to issue injunctions, see 1983 Ga. Const., Art. VI, Sec. I, Par. IV; OCGA § 15-6-8, and nothing in the statute deprives them of that power in this arena. Indeed,

> "whenever [a court is] satisfied that a sale made under process is infected with fraud, irregularity, or error, to the

---

[3] OCGA § 48-4-40 reads:

Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the redemption price or the amount required for redemption, as fixed and provided in Code Section 48-4-42:

(1) At any time within 12 months from the date of the sale; and

(2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

injury of either party, or that the officer selling is guilty of any wrong, irregularity or breach of duty, to the injury of the parties in interest, or either or any of them, the sale will be set aside [by the court]. . . ." [Cit.]

*McKeen v. Federal Deposit Ins. Corp.*, 274 Ga. 46, 48 (549 SE2d 104) (2001). The barment of Dixon's right to redeem had not yet become final when the trial court granted the interlocutory injunction, and the grant of the injunction "will not be interfered with by this Court in the absence of a manifest abuse of discretion. [Cit.]" *Cherokee County v. City of Holly Springs*, 284 Ga. 298, 301 (2) (667 SE2d 78) (2008). As there was evidence that there were no taxes due at the time of the tax sale, the trial court did not abuse its discretion in granting the interlocutory injunction to maintain the status quo, pending resolution of the issues presented.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 2010.

*Ayoub & Mansour, John A. B. Ayoub*, for appellant.
*Proctor & Hutchins, Bradley A. Hutchins, Roy E. Barnes, John R. Bevis*, for appellees.